UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 09-21850-Civ-COOKE/BANDSTRA

FELIX WAJNSTAT,

    Plaintiff

vs.

OCEANIA CRUISES, INC.,

    Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

THIS CASE is before me on the Defendant's Motion to Dismiss the Amended Complaint. I have reviewed the Parties' arguments, the Amended Complaint, and the relevant legal authorities. For the reasons explained in this order, the Defendant's motion to dismiss is granted.

### I. BACKGROUND[1]

This is negligence action brought by Felix Wajnstat against Oceania Cruises, Inc. for injuries he suffered while he was a passenger aboard the Defendant's ship, the *Nautica*. Mr. Wajnstat claims that while cruising on the *Nautica* he became ill, and sought care at the ship's medical center. Niklas Lidstromer, the ship's doctor, saw him on July 10, 2008, and Dr. Lidstromer diagnosed Mr. Wajnstat as suffering from bleeding hemorrhoids. According to Mr. Wajnstat, this diagnosis was wrong. On the morning of July 11, 2008, after Mr. Wajnstat's symptoms had worsened, arrangements were made to have him transported from the *Nautica* to a

---

[1] These facts are taken from the Plaintiff's Complaint. *See Beck v. Deloitte & Touche*, 144 F.3d 732, 735 (11th Cir. 1998) ("In evaluating the sufficiency of a complaint, a court must accept the well pleaded facts as true and resolve them in the light most favorable to the plaintiff.").

local land-based medical facility in the Ukrainian town of Sevastopol.  Mr. Wajnstat claims that he received substandard medical care at the Ukrainian hospital where he underwent three abdominal surgeries, having the majority of his colon removed.

Mr. Wajnstat asserts two causes of action against Oceania Cruises.  The first is titled "negligence," and alleges that Oceania Cruises breached its duty of care by (1) negligently hiring the medical staff aboard the *Nautica*; (2) negligently equipping the *Nautica's* medical center; (3) negligently training the shipboard medical staff; (4) failing to provide communication equipment for the *Nautica's* medical staff to communicate with "emergency room" doctors; (5) failing to timely evacuate Mr. Wajnstat when he became ill; (6) failing to identify appropriate land-based medical facilities; and (7) failing to warn Mr. Wajnstat "of the limitations on the availability of emergency medical consultation and evacuation services in case of medical emergencies during the cruise."  (Am. Compl. ¶¶ 18-19, ECF No. 20).  The second cause of action is titled "vicarious liability for the negligence of [Oceania's] agent, Dr. Niklas Lidstromer."  In this count, Mr. Wajnstat alleges that Dr. Lidstromer breached his duty of care by negligently diagnosing and treating Mr. Wajnstat, and failing to medically evacuate him in a timely manner and to an appropriate land-based medical facility.  Mr. Wajnstat asserts that Oceania Cruises is vicariously liable for the Doctor's negligence under a theory of apparent agency.

## II. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  In order to survive a motion to dismiss, a plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). While detailed factual allegations are not required, a pleading that merely offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive a motion to dismiss. *Id.* When considering a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept all of the plaintiff's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

### III. ANALYSIS

A cruise ship does not have a duty to maintain a doctor on board for the benefit and convenience of its passengers. *Barbetta v. S/S Bermuda Star*, 848 F.2d 1364, 1369, 1371 (5th Cir. 1988). A cruise ship does have a duty to "exercise reasonable care to furnish such aid and assistance [to sick or injured passengers] as ordinarily prudent persons would render under similar circumstances." *Id.* at 1371 (citation omitted). If a cruise ship decides to bring aboard a doctor for the convenience of its passengers, it has a duty to "choose a doctor who is competent and duly qualified." *Id.* A cruise ship is not a floating hospital; it is not in the business of providing medical services to passengers, and it does not possess the expertise required to supervise a physician or surgeon carried on board as a convenience to passengers. *Id.* (quoting *Amdur v. Zim Israel Navigation Co., Ltd.*, 310 F. Supp. 1033, 1042 (S.D.N.Y 1969)).

A ship's doctor holds a unique position among the crew. "Although shipboard medical personnel serve as part of the ship's crew and are subject to the master's directions and orders as to non-medical matters . . . [a cruise ship's physician] is not under the exclusive control of the ship's master, as least with regard to his or her medical decisions and actions." 10-IX Benedict on Admiralty § 9.03 (2010); *see also Barbetta*, 848 F.2d at 1371 (A "ship owner lacks both (1)

3

the expertise to meaningfully evaluate and, therefore, control a doctor's treatment of his patients and (2) the power, even if it had the knowledge, to intrude into the physician-patient relationship."). If a cruise passenger visits a ship's doctor, the patient/passenger and the onboard doctor enter into a private relationship, which does not involve the carrier. *O'Brien v. Cunard S.S. Co., Ltd.*, 28 N.E. 266, 276 (Mass. 1891) (explaining that the scope of treatment by a ship's doctor is solely within the control of the passenger; and that it is the passenger's choice whether to employ the ship's doctor, employ another doctor who may happen to be aboard, treat themselves, or go without treatment, and if the passenger decides to employ the ship's doctor it is the passenger who decides whether to follow the doctor's directions and course of treatment); *see also Barbetta*, 848 F.2d at 1372 ("[E]ven though a ship's doctor is provided for the passenger's convenience, no passenger is required to use the doctor's services; consequently . . . a carrier must honor a passenger's decision not to use the ship's doctor and, when necessary, discharge its duty to provide aid in some other way.").

Since the relationship between a patient/passenger and a ship's doctor is a purely private matter, and because a cruise ship's physician is not under the exclusive control of the ship's master when it comes to medical decisions, maritime law has long held that a ship's doctor's negligence in treating a passenger "will not be imputed to the carrier." *Barbetta*, 848 F.2d at 1369; *see also De Zon v. Am. President Lines, Ltd.*, 318 U.S. 660, 666 n.2 (1943) "The law does not put the business of treating sick passengers into the charge of common carriers, and make them responsible for the proper management of it.") (citation omitted).

### A. Count I: Claims Against Oceania Cruises For Negligence

The Plaintiff's only allegation regarding the negligent hiring claim is a conclusory statement in paragraph eighteen of the complaint that states that Oceania Cruises was negligent

4

in hiring its onboard medical staff.  Mr. Wajnstat has asked me to review documents that have been produced in discovery which he claims support this allegation.  (Pl.'s Supp. Opp'n to Def.'s Mot. To Dismiss 2, ECF No. 34).  It is not appropriate for a court considering a motion to dismiss to rely on materials outside of the four corners of the complaint, unless the complaint refers to the document and the document is central to the plaintiff's claim.  *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1329 n.7 (11th Cir. 2006).  I will not consider the discovery materials submitted by the Plaintiff.  Mr. Wajnstat's allegation that Oceania Cruises breached its duty by negligently hiring the medical staff aboard the *Nautica* is not sufficient to survive the pleading standard set forth by the Supreme Court in *Iqbal*. Accordingly, Oceania Cruises' motion to dismiss this allegation is granted, without prejudice.

The Plaintiff's allegation that the Defendant was negligent in equipping the *Nautica's* medical center fails for similar reasons.  The only allegation in the complaint is the single phrase in paragraph eighteen that Oceania Cruises negligently equipped its onboard Medical Center.  This conclusory allegation is insufficient to survive a motion to dismiss.  This allegation will be dismissed without prejudice.

Mr. Wajnstat's allegation that Oceania Cruises was negligent in training the shipboard medical staff also fails.  As explained above, a cruise ship does not have a duty to provide a medical staff for its passengers.  When a carrier chooses to carry a medical staff aboard for the convenience of its passengers, it does not, as a matter of law, exercise control over that medical team.  This claim does not assert that Oceania Cruises failed to select a medical staff that was competent and duly qualified.  Accordingly, this allegation is dismissed with prejudice.

Mr. Wajnstat alleges that Oceania Cruises failed to provide communication equipment for the *Nautica's* medical staff to communicate with emergency room doctors.  Again, a cruise

ship is not a floating hospital.  This allegation does not assert that Oceania Cruises failed to exercise reasonable care in furnishing aid and assistance to Mr. Wajnstat as ordinarily prudent persons would render under similar circumstances.  This allegation is dismissed with prejudice.

The Plaintiff next alleges that Oceania Cruises is liable to him for failing to timely evacuate him when he became ill.  Nowhere in the Plaintiff's complaint does he allege that either he or his physician, Dr. Lidstromer, requested the carrier to evacuate him earlier than he was actually evacuated at Sevastopol, Ukraine.  Under maritime law, a ship's master does not have the authority to overrule a ship's doctor's medical decisions.  *See, e.g., Metzger v. Italian Line*, 1976 A.M.C. 453 (S.D.N.Y 1975), *aff'd mem.*, 535 F.2d 1242 (2d Cir. 1975).  Once Mr. Wajnstat placed himself under the care of Dr. Lidstromer, the ship's master could not have made an independent decision to evacuate Mr. Wajnstat.  There are no allegations in the complaint that present a plausible cause of action against Oceania Cruises for failing to exercise reasonable care in furnishing aid and assistance to Mr. Wajnstat.  This claim is dismissed with prejudice.

Mr. Wajnstat's remaining claims in count I, for failing to identify appropriate land-based medical facilities, and for failing to warn Mr. Wajnstat of the limitations on the availability of emergency medical consultation and evacuation services in case of medical emergencies during the cruise, both fail for similar reasons.  Cruise ships are not floating hospitals.  Through conclusory allegations, the Plaintiff attempts to assert liability against Oceania Cruises regarding acts or omissions for which Oceania Cruises owed no duty to the Plaintiff.  These allegations are dismissed with prejudice.

### B.  Plaintiff's Count II: Against Oceania Cruises For Vicarious Liability For The Negligence of Dr. Niklas Lidstromer

Mr. Wajnstat argues that the Rule of *Barbetta* only precludes a claim against Oceania Cruises for Dr. Lidstromer's alleged negligence under a theory of *respondeat superior*.  (Pl.'s

Resp. 2, ECF No. 26). He argues that Oceania Cruises may still be held vicariously liable for the doctor's negligence under a theory of apparent agency. Mr. Wajnstat's argument fails for several reasons.

The Rule of *Barbetta* is that there is no *respondeat superior* liability imputed to a ship owner for the ship's physician's negligence, even if the ship's physician is an agent of the carrier. *Barbetta*, 848 F.2d at 1370-72. The reason for the departure in this context from the normal rule of *respondeat superior* liability is because of the lack of control over the shipboard doctor's medical decisions, as a matter of law. The Rule of *Barbetta* does not allow for liability under an apparent agency theory since the doctrine of apparent agency is a simply a form of *respondeat superior* liability. *See* 3 Am. Jur. 2d *Agency* § 262. In other words, it does not matter whether the ship's physician is an actual agent, apparent agent, or otherwise, under maritime law the shipboard doctor's liability is not be imputed to the carrier. The rationale of the court in *Barbetta* does not leave room for pleading around the rule, by labeling the legal theory "apparent authority" as opposed to "*respondeat superior*."

Even if a plaintiff were permitted to plead around the general maritime law using an apparent authority theory, Mr. Wajnstat has not adequately pleaded such a case. "Apparent Agency will be established when: 1) the alleged principal makes some sort of manifestation causing a third party to believe that the alleged agent had authority to act for the benefit of the principal, 2) that such belief was reasonable and 3) that the claimant reasonably acted on such belief to his detriment." *Hajtman v. NCL (Bahamas) Ltd.*, 526 F. Supp. 2d 1324, 1328 (S.D. Fla. 2007). In the context presented by this case, Mr. Wajnstat's alleged belief that Dr. Lidstromer was the apparent agent of Oceania Cruises is not reasonable, as a matter of law.

The passenger ticket contract between Mr. Wajnstat and Oceania Cruises clearly explains that the ship's physician and shipboard medical personnel are independent contractors, and that Oceania Cruises was "**not responsible**" for any actions taken by the onboard medical staff.[2] (Def.'s Mot. to Dismiss 17, ECF No. 24, & Ex. A, ¶¶ 10-11, ECF No. 24-1).  Despite Mr. Wajnstat's allegations that Dr. Lidstromer was the apparent agent of Oceania Cruises because he was dressed in a uniform similar to other officers of the crew, was identified as the ship's doctor, or that the medical staff took notes on Oceania Cruises stationary, Mr. Wajnstat was informed by Oceania Cruises that the cruise line was not responsible for any examination, advice, diagnosis, medication, or treatment that was furnished by the Doctor.

In addition to being directly informed by Oceania Cruises as to the nature of the relationship between himself, the ship's medical staff, and the cruise line by the passenger ticket contract, there is a second reason that Mr. Wajnstat's alleged belief that Dr. Lidstromer was an apparent agent of Oceania Cruises is unreasonable.  "Given the long standing maritime principle that carriers and shipowners are not vicariously liable for the acts of their medical staff, which is based upon the logical notion that vacation cruise boat companies are not hospitals and have no expertise in establishing or controlling medical procedures," it was not reasonable for Mr. Wajnstat to believe that Dr. Lidstromer was the apparent agent of Oceania Cruises.  *Hajtman*, 526 F. Supp. 2d at 1328-29; *see also Warren v. Ajax Navigation Corp.*, No. 91-0230, 1995 WL 688421, at *3, n.3 (S.D. Fla. Feb. 3, 1995) (explaining that even if a plaintiff honestly believed that a shipboard doctor was the cruise line's agent, that belief would still not be reasonable under the law, and noting that ignorance of the law cannot serve as an excuse for its avoidance).

---

[2]  The passenger ticket contract is not outside of the pleadings because the complaint specifically refers to the document, in paragraph four, and because the contract is central to the Plaintiff's claims.  See *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1329 n.7 (11th Cir. 2006); *see also Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1281 n.16 (11th Cir. 1999).

Accordingly, Mr. Wajnstat's second cause of action against Oceania Cruises for vicarious liability for the alleged negligence of Dr. Lidstromer is dismissed with prejudice.

### IV. CONCLUSION

For the reasons explained in this order, it is **ORDERED and ADJUDGED** as follows:

1. The Defendant's Motion to Dismiss (ECF No. 24) is **GRANTED**, consistent with this order.

    a. The Plaintiff's allegations in Count I of the Amended Complaint for negligently hiring the medical staff aboard the *Nautica*, and for negligently equipping the *Nautica's* medical center are dismissed without prejudice.

    b. The Plaintiff's allegations in Count I of the Amended Complaint for negligently training the shipboard medical staff, for failing to provide communication equipment for the *Nautica's* medical staff to communicate with "emergency room" doctors, for failing to timely evacuate Mr. Wajnstat when he became ill, for failing to identify appropriate land-based medical facilities, and for failing to warn Mr. Wajnstat of the limitations on the availability of emergency medical consultation and evacuation services in case of medical emergencies during the cruise, are dismissed with prejudice.

    c. The Plaintiff's allegations in Count II of the Amended Complaint are dismissed with prejudice.

2. The Defendant's Motion to Strike Plaintiff's Supplemental Motion in Opposition to Defendant's Motion to Dismiss (ECF No. 35) is **GRANTED**.

3. The Plaintiff may file a Second Amended Complaint, asserting only those claims dismissed without prejudice, within seven days of this order. The Defendants Response

to the Plaintiff's Second Amended Complaint must be filed within ten days of the filing of the Second Amended Complaint.

**DONE and ORDERED** in chambers, at Miami, Florida, this 4th day of February 2011.

_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Ted E. Bandstra, U.S. Magistrate Judge*
*Counsel of record*